# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### Case No. 12-23434-CIV-ROSENBAUM

JP MORGAN CHASE, N.A.,

      Appellant,

v.

A.B.A. FIRE EQUIPMENT, INC. and
A-1 FIRE EQUIPMENT CORP.,

      Appellees.

_____/

## OPINION AND ORDER

This bankruptcy appeal involves the question of whether, under the Bankruptcy Court's orders, Appellees A.B.A. Fire Equipment, Inc., and A-1 Fire Equipment Corp.'s attorneys' fees should be paid out of proceeds from the sale of Appellees' business, or whether, instead, Appellant JP Morgan Chase, N.A., enjoys a replacement lien on the sales proceeds that takes priority over payment of Appellees' attorneys' fees. For the reasons set forth below, the Court concludes that the Bankruptcy Court's orders resolve the issue in favor of Appellees' attorneys and therefore affirms the Bankruptcy Court's decision.

### *I.  Background*

Appellees A.B.A. Fire Equipment, Inc., and A-1 Fire Equipment Corp. were Florida corporations that owned and operated a closely held business in the fire-protection and electric-

services industry dating back to the mid-1970s.[1]  D.E. 11 at 10.  In the late 2000s, however, Appellees' fortunes turned, and, on September 19, 2011, they filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.[2]  As of the Petition date, Appellees were indebted to Appellant in the amount of approximately $1.2 million.  D.E. 8 at 10.

During the course of the bankruptcy proceedings, on October 21, 2011, the Bankruptcy Court entered an order approving the retention and employment of Meland Russin & Budwick, P.A. ("MRB"), as Counsel for Debtors.[3]  *See* BKC D.E. 50.[4]  That same day, the Bankruptcy Court issued its Final Order Granting Debtors' Emergency Motion Pursuant to 11 U.S.C. §§ 361, 362, 363, 542 and 552 and Fed. R. Bankr. P. 4001, 6003 and 9014 for an Order (I) Authorizing Use of Cash Collateral; (II) Compelling Turnover of Estate Property; and (III) Granting Adequate Protection ("October 21, 2011, Order").[5]  *See* D.E. 2-2 at 66.  Among other directives, the October 21, 2011, Order provided the following:

> 2.   Use of Cash Collateral.  Subject to the terms and conditions of this Order, the Debtors may use Cash Collateral and shall

---

[1] Where docket entries contain more than one numbering system, this Order refers to the numbering system imprinted across the top of the page by the District Court's CM/ECF system.

[2] Appellees' Chapter 11 cases were originally filed separately but were consolidated because Appellees operate as a single concern.

[3] Of course, the Bankruptcy Court's use of the term "Debtors" refers to Appellees A.B.A. Fire Equipment, Inc., and A-1 Fire Equipment Corp.

[4] Documents filed on the District Court docket (Case No. 12-23434-RSR) are cited as "D.E. ___," and documents filed on the underlying bankruptcy docket (Case No. 11-35796-AJC) are cited as "BKC D.E. __."

[5] Although the actual order reflects that it was signed on October 20, 2011, it is docketed on the Bankruptcy Court's docket sheet for this case as having been issued on October 21, 2011.

pay its ordinary and necessary business expenses for the period from September 19, 2011 through and including February 29, 2012 (unless extended by Chase in writing), pursuant to the budget attached . . . .

3.     <u>Cash Collateral Period</u>.  The Debtors' right to use Cash Collateral shall commence on the date of the entry of this Order and expire upon the close of business on **February 29, 2012** (the "**Expiration Date**"); *provided, however*, that the Budget may be amended or modified and the Expiration Date extended by the written agreement of the Debtors and Chase without further notice to or order of the Court.

4.     **Adequate Protection.**

(a)     **In addition to the existing rights and interests of Chase in the Cash Collateral and for the purpose of providing Chase with adequate protection for the Debtors' use of Cash Collateral and all other property in which Chase has an interest, Chase is hereby granted, as security, a replacement lien of equal extent, validity and priority to its prepetition liens, which constitutes a valid, perfected and enforceable first-priority security interest (the "*Replacement Liens*") in and upon the Prepetition Collateral, and the proceeds thereof, and Cash Collateral, and the proceeds thereof, and all other real and personal property of the Debtors of any description whatsoever, . . . , including, without limitation, all equipment, machinery, fixtures, building materials, contracts, documents, drawings, building permits, licenses, leases and any and all proceeds and products, whether tangible or intangible, or any of the foregoing, including proceeds of insurance covering any of the foregoing, which Replacement Liens shall be in addition to the security interests of Chase in the Prepetition Collateral, and the proceeds thereof, and Cash Collateral, and the proceeds thereof, in the same extent, validity and order of priority as such security interests existed on the Petition Date (collectively, all of the collateral described in this paragraph, the "*Collateral*").**

-3-

(b)    The Replacement Liens herein granted to Chase: (i) are and shall be in addition to all security interests, liens and rights of set-off of Chase existing on the Petition Date; and (ii) are and shall be valid, perfected, enforceable and effective as of the date of the entry of this Order without any further action by the Debtors or Chase and without the necessity of the execution, filing or recordation of any financing statements, security documents, mortgages or other documents.

\* \* \* \* \*

6.    <u>Carve-Out</u>.  The Replacement Liens and the 507(b) Claim granted hereunder [to Chase] shall be subordinate to (i) fees payable pursuant to 28 U.S.C. § 1930(a)(6); and (ii) the payment of accrued and unpaid professional fees and expenses allowed by the Court of the Debtors' counsel, Meland Russin & Budwick, P.A. (collectively, the "***Carve-Out***").  The fees pursuant to 28 U.S.C. § 1930(a)(6) can be paid even if the amount is higher than the line item in the Budget as approved by Chase.

\* \* \* \* \*

*Id.* (emphasis in original).

About three months later, on February 1, 2012, the Bankruptcy Court issued its Order Authorizing Sale of Substantially All the Debtors' Assets Free and Clear of all Liens, Claim, Encumbrances and Interests ("February 1, 2012, Order").  *See* D.E. 2-2 at 227.  The Bankruptcy Court issued this Order in response to A.B.A. Fire Equipment, Inc., and A-1 Fire Equipment Corp.'s motion for the entry of an order relating to the sale of their assets.  *See* D.E. 2-2 at 227-28.  During the time that preceded Appellees' request for the February 1, 2012, Order, MGC Systems Corp. reached an agreement with Appellees and Appellant under which it was to purchase essentially all of the assets of Appellees for $830,000.00.  *See* D.E. 8 at 11-12.  Thus, Appellees' motion for the

entry of an order relating to the sale of their assets sought authorization from the Court to

consummate the contemplated sale to MGC Systems Corp.

The resulting February 1, 2012, Order did, indeed, authorize the requested sale. *See* D.E. 2-2

at 227-58. Among other provisions of the Order, the February 1, 2012, Order stated as follows:

> * * * * *
>
> 16.     Notwithstanding the fact that Chase has a lien on all of the Purchased Assets, Chase has agreed to a carve-out from the Purchase Price for the benefit of unsecured creditors of the Debtors' estates equal to no less than ten (10%) of the Ultimate Purchase Price.
>
> * * * * *
>
> H.     The Federal Tax Liens, the Case Liens and any other liens, claims or Interests against the Acquired Assets shall be transferred to the proceeds from the Sale.
>
> I.     By virtue of the transfer of all lien rights to the proceeds from the Sale, the sole source of recovery for any party which claims an interest in the Acquired Assets shall be against the proceeds from the Sale; provided, however this Order does not affect Chase's rights against the Debtors or the Guarantors on account of any deficiency claim.
>
> * * * * *
>
> U.     This Order: (a) is and shall be effective as a determination that, on the Closing Date, all Interests existing against the Acquired Assets before the Closing Date, have been unconditionally released, discharged and terminated (with such Interests to attach to the proceeds of the Sale, to the extent applicable or to continue in the Debtors' other Acquired Assets, if any, that do not comprise a part of the Acquired Assets subject of the Sale, as provided for herein) . . . .
>
> * * * * *
>
> X.     Nothing contained in any orders previously entered in the Chapter 11 Cases shall conflict with or derogate from the provisions of this Order.

*Id.*

On February 24, 2012, MRB filed its First Interim Fee Application seeking $144,094.00 for professional services rendered to, and $8,725.64 for actual expenses incurred by MRB on behalf of, A.B.A. Fire Equipment, Inc., and A-1 Fire Equipment Corp. as Debtors, for a total of $152,819.64, for the period from the Petition Date (September 19, 2011), through and including January 31, 2012. *See* D.E. 1 at 5.  MRB filed a supplement to the First Interim Fee Application on April 16, 2012, in which it sought an additional $43,835.00 for professional services rendered to, and $2,076.72 for actual expenses incurred by MRB on behalf of, A.B.A. Fire Equipment, Inc., and A-1 Fire Equipment Corp. as Debtors, for a total of $45,911.72, for the period from February 1, 2012, through and including April 12, 2012.  *Id.* at 5-6.  In total, therefore, MRB sought $187,929.00 for attorneys' fees and $10,802.36 for actual costs and expenses, or a total award of $198,731.36.  *Id.* at 6.

No one filed any objections to the Fee Application.  *Id.*  On April 23, 2012, the Bankruptcy Court entered an Order allowing the fees and expenses sought by MRB under the Fee Application and authorizing Appellees to pay to MRB all of the $114,633.00 in cash then remaining in Appellees' debtor-in-possession operating accounts, in partial payment of the amounts awarded to MRB under the Fee Application.

Following payment of the $114,633.00, MRB was still owed $84,068.36 in fees and expenses awarded under the Fee Application.  Therefore, it sought payment of this amount from the proceeds of the sale of Appellees' assets authorized under the February 1, 2012, Order.  Chase objected, asserting that MRB had never disclosed that it had unpaid fees and costs that it intended to seek to have paid from the sale proceeds.  Chase further argued that the February 1, 2012, Order gave it an interest in the sale proceeds superior to that of MRB.

The Bankruptcy Court agreed with MRB and ordered payment to MRB of $84,068.36 for unpaid fees and expenses from the sale proceeds.  Chase now appeals this Order.

## *II.  Jurisdiction*

Federal courts are courts of limited jurisdiction.  *Federated Mut. Ins. Co. v. McKinnon Motors*, *LLC*, 329 F.3d 805, 807 (11th Cir. 2003).  With regard to appeals from bankruptcy courts, district courts enjoy jurisdiction over only three types of orders: 1) final orders, as described in 28 U.S.C. § 158(a)(1); (2) interlocutory appeals issued under 11 U.S.C. § 1121(d), as described in 28 U.S.C. § 158(a)(2); and, (3) with leave of the court, other interlocutory orders, as described in 28 U.S.C. § 158(a)(3) and Fed. R. Bankr. Pro. 8001(b).  *Tobkin v. Calderin*, No. 12-22692-MC, 2012 WL 3609867, at *1 (S.D. Fla. Aug. 22, 2012).  As this Court has explained, district courts have jurisdiction to hear appeals "from final judgments, orders, and decrees."  *Id.* at *1-2*;* 28 U.S.C. § 158(a)(1).

Here, Chase properly seeks review under 28 U.S.C. § 158(a)(1).  D.E. 1 at 1.  Chase timely filed this appeal, and the parties do not dispute jurisdiction.  *See* D.E. 1 at 1; *see also* D.E. 8; D.E. 11.  This Court agrees that it enjoys jurisdiction.

## *III.  Discussion*

As a general matter, the Eleventh Circuit has held that a bankruptcy court's interpretation of its own previous order is entitled to substantial deference.  *In re Optical Techs., Inc.*, 425 F.3d 1294, 1302-03 (11th Cir. 2005).  But in applying the abuse-of-discretion standard, reviewing courts do not defer equally to all aspects of a courts decision.  *Id.* (quoting *In re VMS Sec. Litig.*, 103 F.3d 1317, 1323 (7th Cir. 1996)).  Instead, a reviewing court considers the bankruptcy court's application of the facts to the appropriate legal standard under the abuse-of-discretion standard, the bankruptcy court's

factual findings under the clearly erroneous standard, and the bankruptcy court's legal conclusions underlying its decision under the *de novo* standard. *Id.* (quoting *In re VMS Sec. Litig.*, 103 F.3d at 1323)). With these standards in mind, the Court reviews the Bankruptcy Court's ruling that payment of MRB's approved attorney's fees from the sale proceeds took priority over Chase's replacement lien.

In considering this issue, the Court first notes that Chase does not dispute that the October 21, 2011, Order rendered Chase's replacement liens subordinate to the attorneys' fees and expenses payable to MRB by order of the Bankruptcy Court. Nor does Chase take issue with the Bankruptcy Court's award of $114,633.00 to MRB from the Cash Collateral. Instead, it asserts that the impact of the October 21, 2011, Order's prioritization of MRB's fees and expenses over Chase's replacement lien ended when the Cash Collateral was exhausted and the February 1, 2012, Order was entered. Chase further contends that the February 1, 2012, Order superseded the priorities established by the October 21, 2011, Order and awarded Chase's replacement lien priority over the payment of the outstanding balance of fees to MRB.

The problem with Chase's argument arises from the language of both the October 21, 2011, Order and the February 1, 2012, Order. First, contrary to Chase's contention, it is clear that the October 21, 2011, Order did more than simply authorize Appellees' use of the Cash Collateral. Indeed, by its terms, Paragraph 4.(a) of the October 21, 2011, Order addresses Chase's replacement liens with respect to both the Cash Collateral and all other assets of Debtors. In this regard, Paragraph 4.(a) provides,

> Chase is hereby granted, as security, a replacement lien of equal extent, validity and priority to its prepetition liens, which constitutes a valid, perfected and enforceable first-priority security interest (the

-8-

"*Replacement Liens*") in and upon the Prepetition Collateral, and the proceeds thereof, and Cash Collateral, and the proceeds thereof, ***and all other real and personal property of the Debtors of any description whatsoever***, . . . , including, without limitation, all equipment, machinery, fixtures, building materials, contracts, documents, drawings, building permits, licenses, leases and any and all proceeds and products, whether tangible or intangible, or any of the foregoing, including proceeds of insurance covering any of the foregoing, ***which Replacement Liens shall be in addition to the security interests of Chase in the Prepetition Collateral, and the proceeds thereof, and Cash Collateral, and the proceeds thereof*** . . . .

(emphasis added).   Put simply, Paragraph 4.(a) bestowed on Chase replacement liens in the Prepetition Collateral and proceeds of it, the Cash Collateral and proceeds of it, and all other assets of Debtors (which, ultimately, came to include the Sale proceeds resulting from the February 1, 2012, Order, discussed *infra*).   Obviously, "all other assets of Debtors" are assets different and separate from the Cash Collateral and proceeds of it and the Prepetition Collateral and proceeds of it, or no need would exist to break out "and all other assets" as a separate category to which the replacement liens are applicable.

Just as clearly, the language of the October 21, 2011, Order made all of Chase's replacement liens — whether in the Prepetition Collateral and proceeds of it, the Cash Collateral and proceeds of it, or any of Debtors' other assets, without limitation — "subordinate to (i) fees payable pursuant to 28 U.S.C. § 1930(a)(6); and (ii) the payment of accrued and unpaid professional fees and expenses allowed by the Court of the Debtors' counsel, Meland Russin & Budwick, P.A." D.E. 2-2 at 72. Thus, as of the entry of the October 21, 2011, Order, regardless of in what category of property of Debtors Chase held its replacement liens — the Prepetition Collateral or its proceeds, the Cash

Collateral or its proceeds, or all other assets of Debtors — the fees payable to MRB were superior to the replacement liens.

Only a subsequent order of the Bankruptcy Court could have altered that priority. But the February 1, 2012, Order, to which Chase points as having allegedly reprioritized its replacement liens, does not, in fact, do what Chase claims. The February 1, 2012, Order addresses the proceeds of the sale of substantially all of Debtors' assets. Based on the January 21, 2011, Order, we know that Chase's replacement liens in these proceeds, which come from essentially "all other real and personal property of the Debtors," as described in the January 21, 2011, Order, are subordinate to payment of MRB's fees.

And, while it is true that the February 1, 2012, Order provides for a "carve-out from the Purchase Price for the benefit of unsecured creditors of the Debtors' estates equal to no less than ten (10%) of the Ultimate Purchase Price," contrary to Chase's suggestion, this provision of the February 1, 2012, Order does not somehow limit MRB's entitlement to payment of its full fees as approved by the Bankruptcy Court. Instead, the "carve-out" discussed in this provision of the February 1, 2012, Order pertains only to Chase's "lien on all of the Purchased Assets." But Chase's "lien on all of the Purchased Assets" was subordinate to payment of MRB's fees, as a result of the October 21, 2011, Order. Nothing about the "carve-out" provision or any other part of the February 1, 2012, Order purports to reorder from the January 21, 2011, Order the priority of Chase's replacement liens relative to the payment of MRB's fees.[6] For this reason, contrary to Chase's contention, it was not

_____

[6]To the contrary, a separate provision of the February 1, 2012, Order expressly states, "The Federal Tax Liens, the Chase Liens and any other liens, claims or Interests against the Acquired Assets shall be transferred to the proceeds of the Sale." D.E. 2-2 at 247. In other words, the priorities set forth in the January 21, 2011, Order remain in force with regard to the sales proceeds, except as specifically adjusted by the February 1, 2012, Order.

necessary for the February 1, 2012, Order to re-announce MRB's superior right to payment of its fees over Chase's replacement liens, as set forth in the January 21, 2011, Order.  And, for the same reason, the February 1, 2012, Order's provision that "[n]othing contained in any orders previously entered in the Chapter 11 Cases shall conflict with or derogate from the provisions of this Order," D.E. 2-2 at 254, does not relieve Chase of the January 21, 2011, Order's prioritization of MRB's fees over Chase's replacement liens, either.

Chase's alternative claim that MRB's fees must be reduced by amounts incurred after February 29, 2012, when the use of Cash Collateral expired, must also fail.  Chase bases this argument on the idea that MRB's entitlement to payment of its fees was tied completely to the use of Cash Collateral.  Because the right to use Cash Collateral ended on February 29, 2012, Chase reasons, MRB's entitlement to fees must have similarly ceased as of that date.

Chase's position cannot succeed because, as discussed above, the January 21, 2011, Order does not limit payment of MRB's fees to the Cash Collateral source.  Instead, by its terms, the January 21, 2011, Order prioritizes payment of MRB's fees over Chase's replacement liens in the Prepetition Collateral and proceeds thereof, the Cash Collateral and proceeds thereof, *and all other real and personal property of the Debtors of any description whatsoever*.  Because payment of the $84,068.36 in fees to MRB did not come from the Cash Collateral but instead arose out of the proceeds of the sale of Debtors' other real and personal property, limitations on the timing of the use of the Cash Collateral do not apply to the $84,068.36.

### *IV. Conclusion*

For the foregoing reasons, the Bankruptcy Court's conclusions are **AFFIRMED**.  The Clerk

-11-

of Court shall **CLOSE** this case.

      **DONE and ORDERED** at Fort Lauderdale, Florida, this 18th day of March 2013.

ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

copies:

The Honorable A. Jay Cristol

Counsel of Record